John W. RENDE

v.

Mayor Frank L. RIZZO et al.

Civ. A. No. 75–3389.

United States District Court,
E. D. Pennsylvania.

July 13, 1976.

Helen H. Cutner, Philadelphia, Pa., for plaintiff.

Stephen T. Saltz, Deputy City Solicitor, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

Two of the defendants in this police brutality suit, Mayor Frank L. Rizzo and Police Commissioner Joseph F. O'Neill, have filed a motion to dismiss.

The complaint, in which compensatory and punitive damages as well as injunctive relief are sought, is based upon 42 U.S.C. § 1983, and the doctrine of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] This court's pendent jurisdiction is also invoked as to state law claims of assault and battery and various forms of negligence. Plaintiff asserts that the defendants conspired to and in fact did commit acts of brutality against him on the basis of his "class" membership, the class consisting of non-propertied alcoholics with criminal records.[2]

The law in this Circuit is clear that, ". . . complaints in civil rights cases must be specifically pleaded in order to avoid a motion to dismiss." *Kauffman v. Moss,* 420 F.2d 1270, 1275 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); see, *Negrich v. Hohn,* 379 F.2d 213 (3d Cir. 1967). This is especially true when a conspiracy is alleged. *Kauffman v. Moss,* supra; *Everett v. City of Chester,* 391 F.Supp. 26, 29 (E.D.Pa.1975); *Pitt v. Coxe,* 65 F.R.D. 355, 356 (E.D.Pa.1975). With this principle in mind, I conclude that the motion to dismiss must be granted.

---

1. The complaint merely asserts jurisdiction under 28 U.S.C. § 1331, alleging over $10,000. in controversy. Since Section 1331 provides no substantive basis for relief and in view of the claim that the defendants were acting as federal officers during the period in question, see the text infra, I can only assume that plaintiff relies on the *Bivens* doctrine.

2. Complaint, paragraphs 18–19.

98

While the complaint, *sub judice,* is quite specific with reference to the alleged civil rights violations committed by certain named and unnamed police officers, *other* than Rizzo and O'Neill, it is noticeably vague as to them. In fact, the sole involvement of Rizzo and O'Neill in the conspiracy allegedly took the form of encouraging acts of police brutality through public statements calling for a "get tough" policy towards crime.[3] Without even considering the First Amendment implication of predicating liability on such statements, when it is remembered that liability under Section 1983 must be based on personal culpability, *Bracey v. Grenoble,* 494 F.2d 566, 571 (3d Cir. 1974); *Padover v. Gimbel Bros. Inc.,* 412 F.Supp. 920 (E.D.Pa.1976), it is patently obvious that this allegation is insufficient to withstand the motion to dismiss. Plaintiff's reliance on *Armstrong v. Carbonara,* Civil Action No. 75–1888 (E.D.Pa. filed March 5, 1976) is misplaced. The crucial distinction between that case and this one is that the complaint ˉthere specifically alleged that Commissioner O'Neill knew of the violent propensities of the lower ranking police officers but failed to restrain or discipline them. Such allegations are an accepted basis for imposing liability on upper echelon police administrators, *Fisher v. Volz,* 496 F.2d 333, 349 (3d Cir. 1974), and are certainly a far cry from the "conduct" alleged here.

Plaintiff urges upon me another wellspring of federal law as a basis for granting relief against Rizzo and O'Neill. Essentially, it is plaintiff's position that defendants were acting as agents for the United States Government because they sought information concerning plaintiff's involvement in a bank robbery, a federal crime, and therefore are exposed to liability under 28 U.S.C. § 1331 and the Due Process clause of the Fifth Amendment. This assertion is an offshoot of the Supreme Court's holding in *Bivens,* supra, which established that money damages may be maintained for violations by federal officers of the Fourth Amendment. Without deciding whether *Bivens* applies to other than Fourth Amendment claims or to other than federal officers, I find that this claim will not survive defendants' motion to dismiss for the same reason that the Section 1983 claim failed—lack of specificity in the pleading. Aside from the broad, conclusory allegations set forth above, the only other allegation relating to this theory is that, "Persons acting in behalf of the United States Government have a duty to act within the strictures of the Fifth Amendment to the United States Constitution, which defendants failed to do."[4]

Claims brought under Section 1331 and *Bivens* are the federal counterpart to Section 1983 civil rights complaints. As such, collateral issues developed under Section 1983 should apply to these claims by analogy. The Second Circuit, in the remand decision of *Bivens, Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1346–47 (2d Cir. 1972), recognized the logic of this approach. In that opinion the court held that the Section 1983 case law regarding immunity of state police officers should apply to *Bivens*-type claims against federal officers. In an earlier decision from this Circuit, *Bethea v. Reid,* 445 F.2d 1163 (3d Cir. 1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972), Judge Gibbons touched upon the propriety of this reasoning when he said:

> This circuit held, in *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1965), that a state prosecuting attorney was immune from suit under the Civil Rights Act, 42 U.S.C. § 1983. . . . *Bauers v. Heisel* would seem to compel the result that an Assistant United States Attorney is clothed with judicial immunity, unless there is some reason to distinguish between the

---

**3.** Paragraph 14 of plaintiff's complaint alleges that: "Defendants Rizzo and O'Neill, by public statements and otherwise, have encouraged their subordinates, including the persons performing the aforesaid acts, to 'get tough' in

solving crimes and are therefore averred to have conspired in the aforesaid acts."

**4.** Complaint, paragraph 24.

liability of State prosecutors under the Civil Rights Act and the liability of federal prosecutors under the federal common law created by the *Bivens* decision. We perceive no reason for such a distinction. *Id.* at 1165–66. Common sense would require that the specificity requirement of the *Kauffman–Negrich* line of cases apply equally to *Bivens*-type claims under § 1331.

Because plaintiff's complaint fails to meet these requirements, the motion to dismiss Rizzo and O'Neill must be granted. However, heeding the Court of Appeals' recent admonition in *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir. 1976) that "courts . . . allow liberal amendments of civil rights complaints" *id.* at 923, I will grant the plaintiff 30 days in which to amend his complaint against these defendants to cure, if he can, the deficiencies noted above.[5]

---

**5.** Since plaintiff will have 30 days in which to amend his complaint, I need not now decide whether I can or should exercise pendent jurisdiction over his state law claims against Rizzo and O'Neill. If plaintiff is able to cure the defects in his federal claims, I will then decide whether to exercise my discretion in favor of hearing the state claims against these defendants. In the event plaintiff is unable to amend his complaint so as to cure the deficiencies in his federal claims against them, I will then afford the parties an opportunity to present further memoranda or arguments on the appropriate disposition of the pendent jurisdiction question in light of *Aldinger v. Howard,* —— U.S. ——, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).