Jeffrey **ROBERTS**, Defendant
Below, Appellant,

v.

**STATE** of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: March 15, 1985.

Decided: May 22, 1985.

Bettina C. Ferguson (argued), Wilmington, for appellant.

Kevin A. O'Brien (argued), John A. Parkins, Deputy Attys. Gen., for appellee.

Before HERRMANN, Chief Justice, McNEILLY, HORSEY, MOORE, and CHRISTIE, constituting the Court en banc.

CHRISTIE, Justice.

Defendant was convicted in the Court of Common Pleas of driving a motor vehicle under the influence of alcohol in violation of 21 *Del.C.* § 4177.[1] The current statute provides a mandatory jail sentence of 60

---

1. 21 *Del.C.* § 4177. *Operation of vehicle while under the influence of alcohol and/or drugs; penalties.*

(a) No person shall drive, operate or have in actual physical control a vehicle, an off-highway vehicle, a moped or a bicycle while under the

days for second offenders, and because this was defendant's second offense, he was sentenced to such imprisonment. *See* 21 Del.C. § 4177(d)(2). The conviction and sentence were appealed to Superior Court and affirmed. This further appeal followed.

There are two issues which this Court must resolve. The first issue is whether or not the current mandatory sentencing provision of 21 *Del.C.* § 4177(d)(2), as applied to the defendant in this case, amounts to an *ex post facto* law and is, therefore, unconstitutional. The second issue involves a consideration of the consequences of the failure of the police to give Miranda warnings to defendant in view of the recent ruling of the United States Supreme Court in *Berkemer v. McCarty*, 468 U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), which requires that such warnings be given to those in custody without regard to the severity of the charge then pending.

We hold that: (1) the mandatory sentencing provision of the statute is not an *ex post facto* law as it applies to this defend-

ant, since the enhanced punishment could be invoked only after a second offense, and, in this case, the second offense took place after the statute had been amended; and (2) Miranda warnings should have been given to defendant, and, under the holding in the *Berkemer* case, Superior Court erred in admitting into evidence statements made by the defendant while he was in custody because he had not been given the required Miranda warnings.

I

The pertinent facts are as follows: As a result of a prior offense, defendant had been charged with a violation of 21 *Del.C.* § 4177. Pursuant to this statute (and 21 *Del.C.* § 4177B), he had elected to pursue the courses of action available to first offenders in January of 1982. At the time of this election, the statute provided that upon conviction of a second offense, a defendant would be sentenced to imprisonment of at least 60 days. However, the statute permitted the trial court to substitute a resi-

---

influence of alcohol or of any drug or any combination of drugs and/or alcohol.

(b) Any person charged under subsection (a) of this section whose blood alcohol concentration is one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence.

(c) The fact that any person charged with violating this section is or has been legally entitled to use alcohol or a drug shall not constitute a defense against any charge of violating this section.

(d) Whoever is convicted of a violation of subsection (a) of this section shall:

(1) For the first offense, be fined not less than $200 nor more than $1,000 or imprisoned not less than 60 days nor more than 6 months or both, and shall be required to complete a course of instruction and/or rehabilitation program pursuant to § 4117D of this title, which may include confinement for a period not to exceed 6 months, and pay a fee not to exceed the maximum fine.

(2) For each subsequent like offense occurring within 5 years from the former offense,

be fined not less than $500 nor more than $2,000 and imprisoned not less than 60 days nor more than 18 months. For the purposes of this subsection, prior offenses shall include those occurring in any other state, the District of Columbia or under generally conforming local ordinances. A conviction for a violation of a criminal statute dealing with injury or death caused to another person by the person's driving or operation of the vehicle, if driving under the influence was included as an element of such charge, shall constitute such a first or similar offense if occurring within 10 years from the subsequent offense.

(e) In addition to the penalties prescribed in paragraph (2) of subsection (d) of this section, anyone convicted of a subsequent like offense occurring within 5 years from the former offense shall be ordered to complete a program of education or rehabilitation which may include inpatient treatment and be followed by such other programs as established by the training facility, not to exceed a total of 15 months and pay a fee not to exceed the maximum fine.

(f) No person who violates subsection (a) of this section shall receive a suspended sentence. However, for the first offense, the period of imprisonment may be suspended.

dential treatment program for imprisonment.[2]

On March 12, 1983, after the statute was amended, the defendant was again charged (in this current case) with driving while under the influence of alcohol. The facts surrounding this charge were developed at trial through the testimony of a State trooper and a witness who was involved in the incident.

The witness testified that he saw the defendant ignore a red light and collide with the witness' car. The witness said he then went to defendant's car to see if defendant was injured. Defendant first asked what had happened, and then inquired repeatedly as to the witness' name. The witness also testified that the defendant was staggering.

When Trooper Lawrence arrived he observed that defendant's eyes were glassy and his breath smelled of alcohol. Defendant made several statements in response to the trooper's questioning. He admitted that he was the driver of the car which collided with the witness' car, and that he had been drinking earlier that evening. It is not clear whether defendant made these statements in the trooper's car or at the accident scene, prior to entering the trooper's car.

Thereafter, defendant was driven to the State Police Troop, where he was given field tests (which he failed) and an intoxiliz-

er test. The results of the intoxilizer were excluded because the State could not prove that the test was administered in a timely fashion.

Following this arrest, defendant voluntarily entered and completed a residential alcohol treatment program. Between the time of defendant's first and second offenses, the applicable statute was amended, so that the trial court was no longer permitted to allow a defendant, after a second conviction, to substitute participation in a treatment program for the now mandatory 60-day period of incarceration.

## II

Defendant contends that the application of the current mandatory sentencing provision of 21 *Del.C.* § 4177(d)(2) serves to increase the punishment to which he was exposed when he elected first-offender status (instead of proceeding to trial and forcing the State to prove its case against him after his first offense). For that reason he insists that the statute is an *ex post facto* law.

█ The United States Constitution forbids lawmakers from enacting any law which "... assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred...." *Weaver v. Graham*, 450 U.S. 24, 29 n. 13, 101 S.Ct. 960, 965 n. 13,

---

2. The former sentencing provisions of 21 *Del.C.* § 4177 (before the amendment which became effective February 19, 1983) stated in pertinent part:

(d) Whoever is convicted of a violation of subsection (a) of this section shall:

(1) For the first offense, be fined not less than $200 nor more than $1,000, or imprisoned not less than 60 days nor more than 6 months or both;

(2) For each subsequent like offense occurring within 5 years from the former offense, be fined not less than $500 nor more than $2,000, and imprisoned not less than 60 days nor more than 18 months;

(e) In lieu of the penalties prescribed in subsection (d) of this section, anyone convicted of a violation of subsection (a) of this section may, at the discretion of the sentencing judge, be subjected to the following penalties:

(1) For the first offense, be required to complete a course of instruction and/or rehabilitation program established pursuant to § 4177D of this title, which may include confinement for a period not to exceed 6 months, and pay a fee therefor not to exceed the minimum fine as set forth in subsection (d) of this section for the first offender;

(2) For each subsequent like offense occurring within 5 years from the former offense, be confined for a period not to exceed 15 months in a rehabilitation center to complete a course of instruction and/or rehabilitation program established under § 4177D of this title and pay a fee therefor which shall not exceed the minimum fine set forth in subsection (d) of this section for a subsequent offender.

67 L.Ed.2d 17 (1981).[3] The United States Supreme Court indicated that two elements must be satisfied before a statute is to be considered an *ex post facto* law. The law must be retrospective, this is, it must apply to events occurring before its enactment, and its application must be a disadvantage to the offender affected by it. *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964.

■ It is clear that the statutory change which occurred in this case, did not operate as an *ex post facto* law as to this defendant. Defendant's punishment for his original offense was not increased. It was only as to his second offense that he was subjected to an increased punishment under the amended sentencing provisions of 21 *Del.C.* § 4177.

Analogous questions have arisen in cases applying habitual offender statutes. In these cases courts have consistently held that the *ex post facto* clause does not bar application of an habitual offender statute even though one of the predicate offenses occurred prior to the enactment of the statute. *Gryger v. Burke* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).[4]

Defendant suggests that he might not have elected first-offender status following his initial charge, if he had then known that a second offense would result in incarceration. We find this to be unpersuasive. The original statute indicated that incarceration for any subsequent offense was possible. Furthermore, by the time defendant committed his second offense the statute had been amended, and he is deemed to have been on notice thereof.

Defendant contends that this Court's decision in *Gasby v. State*, Del.Supr., 429 A.2d 165 (1981) supports his position. The

pertinent statute in that case was 11 *Del.C.* § 4352(g), which originally stated:

Any person who commits a crime while at large on parole or conditional release and is convicted and sentenced therefor shall serve the unexpired portion of the term under which he was released *concurrently* with any new sentence for the new offense. (Emphasis added.)

Defendant pleaded guilty to a charge of reckless endangering during a time when he was on conditional release, and he was sentenced to prison for two years. As a result, defendant's conditional release was revoked. Meanwhile, prior to his conviction on the charge of reckless endangering, the statute was amended to provide that a defendant who was convicted of another crime while on conditional release would serve the unexpired portion of his original sentence *consecutively* (instead of concurrently), with any new sentence for the new offense. Under these unique circumstances, this Court found that the amended statute violated the prohibition against *ex post facto* laws. The reason for such a finding, however, was that the statutory changes in the *Gasby* case had the effect of increasing the defendant's punishment for his original offense, (which occurred prior to that statutory change). On the other hand, in the present case, the amended statute enhanced only the punishment for defendant's second offense, which occurred after the statutory change.

For reasons hereinafter stated, we are reversing defendant's conviction and remanding for a new trial. If he is convicted as a result of the new trial, he will be a second offender under the current statute.

### III

In this Court's opinion in *State v. Bliss*, Del.Supr., 238 A.2d 848, 850 (1968), we held

3. U.S. Const., art. I, § 9. cl.3; art. I, § 10, cl.1.

4. The Supreme Court in *Gryger*, 334 U.S. at 732, 68 S.Ct. at 1258 stated:

Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the act was passed, makes the act invalidly retroactive or subjects the peti-

tioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.

that Miranda warnings are not required in cases involving alleged violations of motor vehicle statutes "until the Supreme Court furnishes further guidelines...." We reiterated this ruling as recently as 1978. *See Warren v. State,* Del.Supr., 385 A.2d 137 (1978).

The United States Supreme Court's decision in *Berkemer v. McCarty,* 468 U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) has now provided guidelines as to the applicability of the Miranda ruling where less serious charges are involved. In that case the Court held that, "... a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." *Berkemer v. McCarty,* 104 S.Ct. at 3148, 82 L.Ed.2d at 331. To the extent that the rulings of this Court are in conflict with the ruling in *Berkemer v. McCarty,* they are overruled.

We must now decide whether the ruling in *Berkemer v. McCarty* applies in this case, even though it was decided after the alleged offense. The Supreme Court has recently had the opportunity to reexamine the general issue of the retroactive application of its rulings on constitutional issues in the case of *Shea v. Louisiana,* 470 U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). Although the retroactive effect of the *Berkemer* ruling was not addressed in the *Shea* case, the court applied a general rule of retroactivity, previously reserved for fourth amendment cases, to the fifth amendment violation addressed in *Shea.*[5] The Supreme Court held that, "... unless the rule is so clearly a break with the past that prior precedents mandate nonretroactivity, a new [fifth amendment] rule is to be applied to cases pending on direct re-

view when the rule was adopted." *Shea,* 105 S.Ct. at 1069. Because the Supreme Court's opinion in *Berkemer* merely cleared up the existing confusion in state and federal courts as to the applicability of the Miranda ruling, and at most extended the scope of the Miranda ruling, we do not view the "new rule" to be "so clearly a break with the past that prior precedents mandate nonretroactivity". We therefore hold that the rule clarified in the *Berkemer* decision does apply in this case and all other cases currently subject to direct initial review by this Court.

The defendant was not given Miranda warnings, and, thus, some of his statements appear to have been improperly admitted in evidence against him. The record from Superior Court is unclear as to which of defendant's statements were made while he was in custody and which were made prior to that time. For that reason we cannot pass on the contention that any error as to the admission in evidence of defendant's statements was harmless beyond a reasonable doubt. Therefore, we reverse the conviction and remand for a new trial in the course of which the Supreme Court's decision in the *Berkemer* case will be deemed to find application.

\*  \*  \*  \*  \*  \*

Reversed and remanded for a new trial.

---

5. In the *Shea* case, the Supreme Court was faced with the issue of whether its ruling in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (which held that a criminal defendant's rights under the fifth and fourteenth amendments were violated by the government's use of a confession obtained through police initiated interrogation, after the defendant had requested an attorney) would apply retroactively to Shea's convictions where the same issue was raised and the case was pending on direct appeal in the state system when *Edwards* was decided.